UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 |
|---|---|---|---|
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) – DEFENDANT'S MOTION TO DISMISS, STAY, OR TRANSFER PROCEEDINGS (Dkt. [ 11 ], filed October 1, 2019)

## I. INTRODUCTION AND BACKGROUND

Presently before the Court is defendant The Regents of the University of California's ("The Regents") motion to dismiss, stay, or transfer this action. Dkt. 11 ("Mot."). The Court took The Regents' motion under submission on November 5, 2019. Dkt. 18. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

### A. The Bendis Action

On March 15, 2019, Tyler Bendis, Julia Bendis, Nicholas James Johnson, and James Johnson filed a putative class action against William Singer ("Singer"); The Edge College & Career Network, LLC ("The Key"); and The Key Worldwide Foundation ("KWF") in the United States District Court for the Northern District of California. Bendis, et al. v. Singer, et al., Case No. 5:19-cv-01405-EJD (N.D. Cal.) ("the Bendis action"). The Bendis action also includes as defendants: the University of Southern California ("USC"); Stanford University ("Stanford"); the University of San Diego ("USD"); the University of Texas at Austin ("UT-Austin"); Wake Forest University ("Wake Forest"); Yale University ("Yale"); Georgetown University ("Georgetown"); and The Regents (collectively, "the University defendants"). Id. On June 13, 2019, the Bendis plaintiffs filed the operative first amended complaint. Dkt. 11-1, Exhibit A ("Bendis Compl.").

The Bendis complaint asserts class claims for: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), against Singer, The Key, and KWF; (2) violation of the California Consumers Legal Remedies Act ("CLRA"), against the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 |
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | |

University defendants; (3) violation of California's Unfair Competition Law, against the University defendants; (4) negligent failure to monitor the admissions process, against the University defendants; (5) bribery, pursuant to a theory of respondeat superior liability, against the University defendants; (6) negligent supervision, against the University defendants; (7) negligent misrepresentation and omission/concealment, against the University defendants; (8) unjust enrichment against the University defendants; (9) violation of various states' consumer protection laws, against University defendants; and (10) public injunctive relief, against the University defendants, The Key, and KWF. See generally Bendis Compl.

The putative class includes:

> All individuals who, between 2012 and 2018, applied to UCLA, USC, USD, Stanford University, U-Texas at Austin, Wake Forest University, Georgetown University, or Yale University, paid an undergraduate admission application fee to one or more of these universities, with respect to an undergraduate admission application that was rejected by the university.

Bendis Compl. ¶ 413. The putative class excludes:

> (a) any employees of Defendants, including any entity in which any of the Defendants has a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendants;
>
> (b) the officers, directors, and legal representatives of Defendants; and
>
> (c) the Judge and the court personnel in this case as well as any members of their immediate families.

Bendis Compl. ¶ 414.

The gravamen of the plaintiffs' claims in the Bendis action is that parents, whose college-age children had insufficient college admissions test scores and other credentials, participated in a scheme with Singer and his two entities, The Key and KWF, to gain admission for the parents' children to the University defendants. Bendis Compl. ¶ 1. According to the Bendis plaintiffs, parents paid Singer large sums of money—in return, Singer created false athletic profiles for the parents' children and offered bribes to the University defendants' employees. Bendis Compl. ¶ 2. The University defendants set aside a particular number of "slots" in each graduating class for student-athletes. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 |
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | |

Accordingly, the bribes that Singer offered on behalf of parents were intended to induce the University defendants' employees to fill these student-athlete slots with the parents' children.[1] Id.

### B. The Riffel Action

Plaintiff Valentina Riffel ("Riffel") filed this putative class action ("the Riffel action") against The Regents on August 14, 2019, in Superior Court of the State of California for the County of Los Angeles. Dkt. 1-1, Exhibit A ("Riffel Compl."). On September 24, 2019, The Regents removed this case to the United States District Court for the Central District of California pursuant to the Class Action Fairness Act ("CAFA"). Dkt. 1.

Riffel alleges that, through its website, the University of California, Los Angeles ("UCLA") "represented that it would consider applicants for admission to UCLA on their merits" but that representation "was untrue, as UCLA failed to state that, in exchange for payment, it would designate applicants for admission as student-athlete recruits and thereby afford them a higher likelihood of admission than applicants who are not designated as student-athlete recruits[.]" Riffel Compl. ¶¶ 17–18. According to Riffel, this misrepresentation was intended "to induce would-be applicants . . . [to] pay, or reimburse, an application fee in connection with an application for admission to UCLA." Riffel Compl. ¶ 19. Riffel asserts class claims against The Regents for: (1) fraud; (2) negligent misrepresentation; (3) false advertising; (4) violation of California's Unfair Competition Law; and (5) negligence. See generally Riffel Compl.

The proposed class includes "all individuals who paid, or reimbursed the payment of, an admission application fee in connection with an application for admission to [UCLA] during Class Period." Riffel Compl. ¶ 1. The Class Period "is defined as four (4) years

---

[1] On June 14, 2019, a different group of plaintiffs filed suit against Singer, The Key, KWF, and the University defendants. See Tamboura, et al. v. Singer, et al., Case No. 5:19-cv-03411-EJD ("the Tamboura action"), Dkt. 1. The claims and proposed class definition in the Tamboura action are substantially similar, if not identical to, those in the Bendis action. Id. The same counsel represents plaintiffs in both the Bendis and Tamboura actions, and both cases are before the same court in the Northern District of California.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 |
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | |

prior to the filing of this Complaint, through the date final judgment is entered in this case." Id.

On October 1, 2019, The Regents filed a motion to dismiss, stay, or transfer proceedings. See generally Mot. Riffel filed an opposition on November 5, 2019. Dkt. 17 ("Opp."). The Regents filed a reply on November 12, 2019. Dkt. 19 ("Reply").

## II. LEGAL STANDARD

The "first-to-file" rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94–95 (9th Cir. 1982). Pursuant to the first-to-file rule, a district court may transfer, stay, or dismiss an action when a similar action has been filed in another district court. Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 625–26 (9th Cir. 1991). "The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." SB Hosp. Palm Springs, LLC v. Baymont Franchise Sys., Inc., No. 5:19-cv-00381-JGB-KK, 2019 WL 4422675, at *3 (C.D. Cal. May 8, 2019) (internal citation and quotation marks omitted). "The most basic aspect of the first-to-file rule is that it is discretionary; an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." Alltrade, 946 F.2d at 628.

## III. DISCUSSION

### A. The First-to-File Rule

The Regents contend that the Riffel action should be dismissed, stayed, or transferred pursuant to the first-to-file rule.[2] Mot. at 4. "In determining whether to apply the first-to-file rule, courts consider three threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." SB Hosp. Palm Springs, 2019 WL 4422675, at *3. The Court considers these factors in turn.

---

[2] In the alternative, The Regents seeks to transfer this action to the Northern District pursuant to 28 U.S.C. § 1404(a). Mot. at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 | |
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | | |

### 1. Chronology of the Actions

The Bendis action was filed on March 15, 2019. See Bendis, et al. v. Singer, et al., Case No. 5:19-cv-01405-EJD (N.D. Cal.), Dkt. 1. In contrast, Riffel filed this action on August 14, 2019, nearly five months later. See Riffel Compl. Accordingly, this factor favors application of the first-to-file rule. See, e.g., Alioto v. Hoiles, No. 4:04-cv-1395-PJH, 2004 WL 2326367, at *5 (N.D. Cal. Oct. 12, 2004) (finding that first factor weighed in favor of application of first-to-file rule where first case was filed one week prior to second case).

### 2. Similarity of the Parties

The Regents contends that that there is a similarity of the parties between the Riffel and Bendis actions because: "(1) The Regents is the defendant in both cases; and (2) the classes overlap." Mot. at 5. According to Riffel, however, there is no similarity of parties because "the Plaintiff in this action is different than the Bendis plaintiffs" and "the class definitions in the instant action and Bendis are distinguishable and . . . there is no complete overlap of parties and putative class." Opp. at 12.

In considering the similarity of the parties, "[e]xact parallelism between the two actions need not exist; it is enough if the parties . . . are 'substantially similar.'" Alioto, 2004 WL 2326367, at *5 (citing Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir.1989)). Indeed, "[t]he rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc., 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008). Moreover, "in assessing the similarity of parties in a class action, courts compare the classes, not the class representatives." Bodley v. Whirlpool Corp., No. 17-cv-05436-JST, 2018 WL 2357640, at *2 (N.D. Cal. May 24, 2018).

The proposed class in the Bendis action includes:

All individuals who, between 2012 and 2018, applied to UCLA, USC, USD, Stanford University, U-Texas at Austin, Wake Forest University, Georgetown University, or Yale University, paid an undergraduate admission application fee to one or more of these universities, with respect to an undergraduate admission application that was rejected by the university.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 |
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | |

Bendis Compl. ¶ 413. The proposed class in Riffel includes "all individuals who paid, or reimbursed the payment of, an admission application fee in connection with an application for admission to [UCLA] during . . . [the] four (4) years prior to the filing of this Complaint, through the date final judgment is entered in this case." Riffel Compl. ¶ 1. According to Riffel, the proposed classes do not overlap because "the Bendis class is limited to undergraduate applicants that were *denied* admission . . . whereas the Riffel class pertains to *all* UCLA applicants[.]"³ Opp. at 13 (emphases added). Riffel further argues that, whereas the putative class in Riffel "is comprised of only UCLA applicants[,]" the putative class in Bendis consists of applicants to other schools. Opp. at 13.

The Court does not find these distinctions material. Here, some of the members of the proposed class in Riffel, specifically those that "paid . . . an admission application fee in connection with an application for admission to" UCLA, would fall within the proposed Bendis class to the extent that these applicants were later denied admission. Riffel Compl. ¶ 1; Bendis Compl. ¶ 413. In the class action context, that is all that the first-to-file rule requires. See, e.g., Adoma v. Univ. of Phoenix, Inc., 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010) (determining that proposed classes in two actions were "substantially similar in that both classes seek to represent *at least some of the same individuals*" and [i]f the collective action in Sabol is certified, plaintiff *may* be able to opt in.") (emphases added).

---

³ The Court notes that "[n]o class may certified that contains members lacking Article III standing. The class must therefore be defined in such a way that anyone within it would have standing." Sanders v. Apple Inc., 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (internal citation and punctuation omitted). Here, the proposed Riffel class includes applicants that were ultimately *admitted* to UCLA. Cf. id. ("Currently the class definition includes all persons within the United States who own a 20-inch Aluminum iMac. This definition necessarily includes . . . individuals who either did not see or were not deceived by the advertisements, and individuals who suffered no damages. Such individuals would lack standing to bring these claims."). Assuming *arguendo* that members of the proposed Riffel class who relied on The Regents' alleged misrepresentations but were nonetheless admitted to UCLA lack standing, and that only those members that were denied admission have standing, the proposed class in Bendis, which includes only those students that were *denied* admission, would subsume any class that could be certified in the Riffel action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 |
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | |

### 3. Similarity of the Issues

The parties disagree as to whether the Bendis and Riffel actions involve similar issues. The Regents asserts that "[b]oth actions raise the same core issues—whether The Regents made representations regarding its admission process for its UCLA campus that were false and misleading and whether The Regents was negligent in its oversight of that admissions process." Mot. at 7. According to Riffel, however, the cases involve dissimilar issues because they involve different causes of action and because the Bendis action "rel[ies] heavily on the unlawful actions of Mr. Singer, KWF, and The Key" who are not parties in the Riffel action. Opp. at 13–14.

"The 'similarity of the issues' factor does not require total uniformity of claims but rather focuses on the *underlying factual allegations*." Sporn v. TransUnion Interactive, Inc., No. 18-cv-05424-YGR, 2019 WL 151575, at *5 (N.D. Cal. Jan. 10, 2019) (emphasis in original) (internal citation omitted). "Cases are sufficiently similar where key issues overlap and the resolution of one case could affect the resolution of the other." Carrera, 2012 WL 13012698, at *5 (internal citation and quotation marks omitted).

The Bendis complaint alleges that parents, Singer, KWF, The Key, and the University Defendants, including The Regents, engaged in a "fraudulent university-admission scheme"; that "unqualified students found their way into the admissions rolls of highly selective universities, while those students who played by the rules were denied admission"; that "each of the universities were negligent in failing to maintain adequate protocols and security measures . . . to guarantee the sanctity of the college admissions process"; that "[e]ach of the rejected students was damaged . . . in that, at a minimum, each Class member paid college admission application fees . . . without any understanding or warning that unqualified students were slipping in through the back door"; and that "[e]ach of the universities . . . promised an application process that was fair and that objectively evaluated all applicants based on the university's common set of application criteria." Bendis Compl. ¶¶ 1–6. Similarly, the Riffel complaint alleges: that "UCLA represented that it would consider applicants for admission to UCLA on their merits"; that the representation was untrue "as UCLA failed to state that, in exchange for payment, it would designate applicants for admission as student-athlete recruits and thereby afford them a higher likelihood of admission than applicants who are not designated as student-athlete recruits"; that students, relying on UCLA's representations regarding its merits-based admission process, "paid, or reimbursed payment of, an application fee in connection with an application for admission to UCLA"; and that The Regents "knew or should have known

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 |
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | |

that its men's soccer coach was selling 'student-athlete recruit' designations that allowed students who were not recruited student-athletes to have their applications for admission considered under the lower bar reserved for student-athlete recruits." Riffel Compl. ¶¶ 17–19, 31.

The Court concludes that the Bendis and Riffel actions involve similar issues regarding, *inter alia*: (1) whether universities, including UCLA, were engaged in fraudulently admitting applicants as student-athletes; (2) whether these universities, including UCLA, misrepresented the criterion considered in connection with a prospective student's admissions application; (3) whether applicants relied on these misrepresentations or omissions in paying admissions application fees; and (4) whether those tasked with oversight responsibilities, including The Regents, were negligent in failing to ensure that universities, including UCLA, administered the admissions process in good-faith and based on applicants' merits. That the complaints in the Bendis and Riffel actions assert different causes of action does not compel a different result. See, e.g., Red v. Unilever United States, Inc., No. 2:09-cv-07855-MMM-AGR, 2010 WL 11515197, at *5 (C.D. Cal. Jan. 25, 2010) ("Although the Red action includes a claim not found in the Rosen action . . . the issues in the two cases substantially overlap[.] This is all the first-to-file rule requires; it is not necessary that exactly parallel causes of action be alleged."); accord Sporn, 2019 WL 151575, at *6 ("Accordingly, although the claims in the instant action and Sgouros are based on different statutes, the factual basis thereof and the legal issues presented therein are substantially the same."); Carrera, 2012 WL 13012698, at *5 ("even though Plaintiff's FAC asserts some claims that were not asserted in Diaz, the factual and legal issues substantially overlap and thus weigh in favor of applying the first-to-file rule.").

### B. No Equitable Exception Applies

Even where the first-to-file doctrine's threshold requirements are met, courts may decline to apply the doctrine "pursuant to several equitable exceptions: (1) bad faith; (2) anticipatory suits; (3) forum shopping; and (4) a balance of convenience weighing in favor of the later filed suit." SB Hosp. Palm Springs, 2019 WL 4422675, at *3. The Court considers each in turn.

First, Riffel does not contend that The Regents has engaged in bad faith. Second, the equitable exception for anticipatory suits does not apply because the Bendis and Riffel actions do not present a situation where "the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." Guthy-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 |
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | |

Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 271 (C.D. Cal. 1998). In contrast, the plaintiffs in Bendis, the first-filed action, are *not* the defendants in Riffel. Third, in seeking to dismiss, stay, or transfer this case, there is no indication that The Regents is engaged in "judge shopping" because, to date, the Court has not ruled *against* The Regents on the merits of Riffel's claims in this case, nor has the court in the Northern District ruled *for* The Regents on the merits of the claims in the Bendis action. See Shields v. Amerigas Propane, Inc., No. 2:15-cv-00754-KJM, 2015 WL 5436772, at *4 (E.D. Cal. Sept. 15, 2015) ("If plaintiff is seeking a new judge, defendant also has reasons to reverse-forum shop and be heard before a judge that has once ruled in its favor.").

As to the fourth factor, "convenience of the parties, while a relevant consideration, is usually reserved for the court in the first-filed action and the court in the second-filed action is not required to duplicate this inquiry." MeridianLink, Inc. v. DH Holdings, LLC, No. 2:10-cv-02708-ABC-JEM, 2010 WL 11512182, at *2 (C.D. Cal. June 16, 2010) (internal citation and punctuation omitted). Although Riffel contends that "[t]he relevant witnesses, documents, and other evidence . . . such as coaches and other employees" are in the Central District, Riffel appears to concede that The Regents' principal place of business is in the Northern District. Opp. at 18. The Court also notes that the proposed class in this case contains no geographic limitations and therefore presumably includes individuals who reside in the Northern District (and others who reside outside California altogether). And, Riffel asserts claims on behalf of a putative class. See Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) ("when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight."). Accordingly, the Court concludes that "[t]he competing convenience factors do not so heavily favor this District that they defeat application of the first-to-file rule." MeridianLink, 2010 WL 11512182, at *3.

### C. Transfer is Preferable to Dismissal or Stay

Where the first-to-file rule applies, "the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997). Here, The Regents assert that "dismissal is the appropriate remedy." Mot. at 7.

"Where the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed." Glob. Music Rights, LLC v. Radio Music License Comm., Inc., No. 2:16-cv-09051-TJH-AS, 2017 WL 3449606, at *8 (C.D. Cal. Apr. 7, 2017) (internal brackets and citation omitted). Moreover, "[i]f there are concerns regarding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 |
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | |

the availability of remedies in the court of first filing, . . . then the court of second filing should consider a stay." Intersearch, 544 F. Supp. 2d at 963. Alternatively, the court of second filing may transfer the action where "[t]ransfer may facilitate consolidation" because "by permitting two related cases which are filed initially in different districts to be consolidated, transfer plainly helps needless duplication of effort." Priddy v. Lane Bryant, Inc., No. 2:08-cv-06889-MMM-CW, 2008 WL 11410109, at *9 (C.D. Cal. Nov. 24, 2008). "A district court may only transfer an action pursuant to the first-to-file rule to a transferee district 'where it might have been brought.'" Sporn, 2019 WL 151575, at *6 (citing In re Bozic, 888 F.3d 1048, 1054 (9th Cir. 2018)).

That the Bendis and Riffel complaints allege several distinct causes of action counsels against outright dismissal of the second-filed Riffel action. See Priddy, 2008 WL 11410109, at *9 ("The fact that the Moody and Priddy actions each involve at least one distinct claim counsels against dismissal of the later-filed Priddy complaint."). Moreover, the Court concludes that transfer of this action to the Northern District of California is preferable to a stay. See Red, 2010 WL 11515197, at *6 (finding that transfer of second-filed class action to district where first-filed class action was pending was appropriate because it is "preferable that one court assess the factors that point to factual and legal overlap and sort out the class action issues that will arise in each of the related actions. In that way, the rights of all potential class members can be fully protected and the responsibility of defendants vis a vis the putative class members can be properly identified and allocated.") (citing Byerson v. Equifax Information Services, LLC, 467 F.Supp.2d 627, 636 (E.D. Va. 2006)).

### D. Transfer to the Northern District is Appropriate

Having concluded that transfer to the Northern District of California will best promote judicial economy and ensure consistent judgments, the Court must next consider whether the Northern District of California is a judicial district where the Riffel action "might have been brought." In re Bozin, 888 F.3d at 1054 (citing 28 U.S.C. § 1404(a)). "The transferee court meets this requirement if: (1) it would have subject-matter jurisdiction; (2) defendants would be subject to personal jurisdiction; and (3) venue would be proper." Sporn, 2019 WL 151575, at *6.

#### 1. Subject Matter Jurisdiction

Here, The Regents removed this action pursuant to CAFA. Dkt. 1. CAFA vests a district court with subject matter jurisdiction over "any civil action in which the matter in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 |
|---|---|---|---|
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | |

controversy exceeds the sum or value of $5,000,000 . . . and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A). The Regents is a California citizen, while the proposed class consists "of *all individuals* who paid . . . an admission application fee in connection with an application for admission" to UCLA. Riffel Compl. ¶ 1 (emphasis added). Because the proposed class therefore includes non-California class members, CAFA's minimal diversity of citizenship requirement is met.

Although the Riffel complaint does not allege a specific amount-in-controversy, The Regents' notice of removal asserts that, "[u]sing data and records that The Regents maintains in the normal course of business, the admission fees received by The Regents in connection with the applications submitted during the putative class period, in the aggregate, are in excess of $ 5 million." Dkt. 1, ¶ 19. Riffel does not appear to contest that the amount-in-controversy in this case exceeds CAFA's $5 million jurisdictional threshold. Thus, The Regents' uncontested assertion, contained in The Regents' notice of removal and based on "data and records," is sufficient to satisfy CAFA's amount-in-controversy requirement. See Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197–98 (9th Cir. 2015) (noting that, pursuant to CAFA, "the Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal.") (citing Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014)).

Accordingly, the Court concludes that the Northern District would have subject matter jurisdiction over the Riffel action pursuant to CAFA.

### 2. Personal Jurisdiction and Venue

The Regents is incorporated in California and maintains its principal place of business in California. Dkt. 1, ¶ 14. Accordingly, a court in the Northern District of California could properly exercise personal jurisdiction over The Regents. See Google, Inc. v. Eolas Techs. Inc., No. 13-cv-05997-JST, 2014 WL 2916621, at *1–2 (N.D. Cal. June 24, 2014) (noting that requirement for general jurisdiction is "satisfied by the defendant having been incorporated in the forum state, or maintaining its principal place of business there" and that The Regents "is incorporated in California and maintains its principal place of business there.").

Where "a State has more than one judicial district" and "a defendant that is a corporation is subject to personal jurisdiction" in that State, venue is proper "in any district

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | 'O' | JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-08286-CAS(RAOx) | Date | November 12, 2019 |
| Title | VALENTINA RIFFEL v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL. | | |

in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State[.]" 28 U.S.C. § 1391(c)(2). Here, the Court has already determined that The Regents is subject to general jurisdiction in California. The Regents asserts that it maintains "its principal place of business in Oakland, California," which is within the Northern District of California. Mot. at 10. Therefore, venue is proper in the Northern District of California because a court in the Northern District could properly exercise personal jurisdiction over The Regents if the Northern District were a separate State.

## IV. CONCLUSION

The Court **GRANTS**, in part, The Regents' motion to dismiss, stay, or transfer proceedings pursuant to the first-to-file rule. The Court **TRANSFERS** this action to the United States District Court for the Northern District of California. The Court **DENIES** The Regents' motion in all other respects.

IT IS SO ORDERED.

| | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |