UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VALENTINA RIFFEL,<br><br>    Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>    Defendant. | Case No. 5:19-cv-07489-EJD<br><br>**ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING**<br><br>Re: Dkt. No. 44 |

Plaintiff Valentina Riffel ("Riffel") sues the Regents of the University of California ("Defendant") for causes of action arising from the "Varsity Blues" college admissions scandal involving William "Rick" Singer and parents of college applicants conspiring to bribe athletic coaches and administrators to get their children admitted to various universities through fraud. Defendant has filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Court took this motion under submission without oral argument pursuant to Civil Local Rule 7-1(b). For reasons stated below, the Court holds that Plaintiff lacks standing to pursue her claims. The Court thus lacks jurisdiction and must **DISMISS** Plaintiff's claims.

**I.   BACKGROUND**

    **A.   Factual Background**

The Court previously detailed the facts related to the "Varsity Blues" college admissions scandal in *Tamboura v. Singer*; *Bendis v. Singer* ("*Tamboura"*), No. 5:19-cv-03411-EJD, 2020

WL 2793371 (N.D. Cal. May 29, 2020).[1]  Therefore, the Court reviews allegations relevant to Riffel's action and Defendant's motion to dismiss below.

Riffel asserts claims on behalf of herself and all individuals "who paid, or reimbursed the payment of, an admission application fee" to the University of California, Los Angeles ("UCLA"). Complaint ("Compl.") ¶ 1, Dkt. No. 1-1.  Riffel claims that through its website, UCLA represented that it would consider prospective applicants for admission to the university on their merits.  *Id*. ¶ 17.  Specifically, Riffel focuses on the following statement (the "Representation") found on the admissions page of UCLA's website:

> "The goal of the campus' admissions review process is to single out from a large and growing pool of academically strong applicants those unique individuals who have demonstrated the intellectual curiosity, tenacity, and commitment to community service expected of the UCLA graduate."
>
> "Selection is based on a comprehensive review of all information—both academic and personal—presented in the application. All applications are read twice, in their entirety, by professionally trained readers. After independently reading and analyzing a file, the reader determines a comprehensive score that is the basis upon which the student is ultimately admitted or denied."

*Id*.  According to Riffel, UCLA made the Representation through its website "with the intent to induce would-be applicants . . . to rely upon the Representation and pay, or reimburse, an application fee in connection with an application for admission to UCLA.  *Id*. ¶ 23.  But she contends the Representation was untrue because UCLA failed to inform prospective applicants that in exchange for payment, UCLA would designate applicants as student-athlete recruits and "thereby afford them a higher likelihood of admission than applicants who are not designated as student-athlete recruits."  *Id*. ¶ 18.  Relatedly, Riffel alleges she was not aware that an applicant could pay money to have her application considered under the "more lenient standard."  *Id*. ¶ 22.

---

[1] Although Riffel's complaint does not reference "Varsity Blues" or the college admissions scandal generally, the Court finds that Riffel's allegations relate directly to William "Rick" Singer's scheme to conspire with the parents of college applicants to bribe officials to have their children admitted to various universities through fraud.

Case No.: 5:19-cv-07489-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

2

1  Riffel adds that had she known that UCLA was a participant in the college admission scandal,
2  "[she] would not have paid or reimbursed an application fee in connection with an application for
3  admission to UCLA." *Id*. ¶ 32.  Finally, she alleges that as a result of their reliance, she along
4  with each member of the putative class suffered a "loss of property—the fees [the] Class Members
5  paid or reimbursed in connection with an application for admission to UCLA." *Id*. ¶¶ 19, 24.

### B.  Procedural Background

On May 29, 2020, the Court dismissed the *Bendis* and *Tamboura* actions after the plaintiffs were unable to plead an adequate cognizable injury-in-fact, and therefore, lacked standing to pursue their claims. *Tamboura*, 2020 WL 2793371, at *4.  Following the dismissal, the Court held a status conference to see how Riffel and Defendant wanted to proceed in light of the Court's ruling.  After the parties were unable to reach a resolution, Defendant filed a motion to dismiss Riffel's complaint for lack of standing.  ('Mot."), Dkt. No. 44.  Thereafter, Riffel filed an opposition in response to the motions to dismiss ("Opp'n"), *see* Dkt. No. 47, to which Defendant filed a reply ("Reply iso Mot.").  *See* Dkt. No. 48.

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction; they are authorized only to exercise jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder. *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").  Hence, an Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution.  *In re LinkedIn User Priv. Litig.*, 932 F. Supp. 2d 1089, 1092 (N.D. Cal. 2013).

To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the

challenged action of the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). To establish an injury-in-fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quotation marks and citation omitted). To establish a traceable injury, there must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotation marks and citation omitted) (alteration omitted). It must also be "likely" as opposed to merely "speculative" that the injury will be "redressed by a favorable decision." *Id*. at 561 (quotation marks and citation omitted). And if a plaintiff is seeking injunctive or declaratory relief, the plaintiff must demonstrate "a sufficient likelihood that [they] will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

If a plaintiff cannot allege Article III standing, then the federal court lacks jurisdiction over the case and must dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1). *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003); S*teel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 109-10 (1998). Indeed, "[a]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *In re Apple Processor Litig.*, 366 F. Supp. 3d 1103, 1107 (N.D. Cal. 2019) (quoting *Spokeo*, 136 S. Ct. at 1547). "When '[s]peculative inferences' are necessary . . . to establish either injury or the connection between the alleged injury and the act challenged, standing will not be found." *Johnson v. Weinberger*, 851 F.2d 233, 235 (9th Cir. 1988) (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 45 (1976)).

**III.   DISCUSSION**

Defendant contends that Riffel's alleged harm is identical to the economic loss harm plead in *Tamboura* and *Bendis*, which the Court found was insufficient to establish Article III standing.

In *Tamboura* and *Bendis*, the argument raised by the plaintiffs was compared to a "bargain-for-exchange" scenario. *Tamboura*, 2020 WL 2793371, at * 3. The plaintiffs stated that when they applied for admission to the defendant universities, they applied based on the universities' alleged misrepresentations and omissions about the equity of their merits-based admissions process. They argued that the admissions process was neither fair nor objective because of the universities' involvement in the college admissions scandal. The plaintiffs also believed they had suffered the economic harm of not receiving what they agreed to pay for. *Id*. Despite the parallels, Riffel does not attempt to differentiate her alleged harm from the economic harm at issue in *Tamboura* and *Bendis*. *See generally* Opp'n. But given the similarities between the actions, the Court finds no reason to conclude that Riffel has plead a concrete, particularized economic injury sufficient to establish Article III standing.

In *Tamboura* and *Bendis,* the alleged economic harm could not form the basis for Article III standing. Like Riffel, the plaintiffs in *Tamboura* and *Bendis* did not allege that they applied for, were being considered for, or were denied an athletic spot. *See Tamboura*, 2020 WL 2793371, at *3. Therefore, they could not show they were "*particularly*" affected by the college admissions scandal. *Id*. (emphasis in original). This Court explained that an injury-in-fact cannot just be based on some morally irreprehensible act. *Id*. (discussing *Allen v. Wright*, 468 U.S. 737, 739-40 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Some link between the bad act and the plaintiff is needed. *Id*. Although the *Bendis* and *Tamboura* plaintiffs argued that they had plead an injury-in-fact because they alleged they would not have applied to the universities had they known about the ongoing fraud, the Court explained that this was "no different than the type of generalized grievance that courts have routinely rejected." *Id*. at *4 (citing *Birdsong v, Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) ("At most, the plaintiffs plead a potential risk of hearing loss not to themselves, but to other unidentified iPod users who might choose to use their iPods in an unsafe manner. The risk of injury the plaintiffs allege is not concrete and particularized as to themselves."); *Lujan*, 504

Case No.: 5:19-cv-07489-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

5

U.S. at 563–67 (holding that the plaintiffs fear of harm to endangered species, without some showing of particular injury, was insufficient)).

Here, Riffel's alleged economic harm is foundationally no different from the economic harm alleged in *Tamboura* and *Bendis*. Riffel contends that had she been aware that UCLA had a system by which prospective applicants could pay a sum certain of money to receive preferential treatment in UCLA's admissions process, she would never have applied or paid UCLA's application fee for admission to the university. Opp'n at 5-8. She argues that she has plead an injury-in-fact because UCLA, through its "advertising," misled and failed to disclose material information "which in turn caused [Riffel] to rely on the misrepresentation or material omissions which resulted in [Riffel] spending her money and submitting an application for admission." Opp'n at 5-6 (citing *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 847 (N.D. Cal. 2012)). Like the plaintiffs in *Tamboura* and *Bendis*, Riffel does not allege that she sought admission as a student athlete or that the college admissions scandal prevented her application from being evaluated on its merits. Thus, without some link between her application and UCLA's alleged bad acts, Riffel has simply plead the type of generalized grievance routinely disallowed by courts and already rejected in *Tamboura* and *Bendis*.

Riffel's reliance on cases such as *Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) and *Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x. 359 (9th Cir. 2009) to support her economic harm argument is also misplaced. In each of those cases, unlike in the present matter, the plaintiffs alleged individual economic harm directly created by the defendants' representations that the property at issue had features or value that the property ultimately did not have. And therefore, the plaintiffs did not receive the benefit of their bargain. *See Maya*, 658 F.3d at 1069 (explaining that plaintiffs' "claim that, as a result of defendants' actions, they paid more for their homes than the homes were worth at the time of sale," and "claim that they would not have purchased their homes had defendants made the disclosures allegedly required by law" constituted "a quintessential injury-in-fact"); *Chavez*, 340 F. App'x. at 360-61 (finding that plaintiff "lost the

purchase price" of the beverage because "he did not know the geographic origin of the products" and consequently "lost money . . . in that he did not receive what he had paid for.").

Riffel fails to allege how the college admissions scandal affected her personally or how the alleged misrepresentations and omissions caused her to not receive what she bargained for when she paid her admissions application fee. She has not plausibly alleged that she was "deprived of an agreed-upon benefit" which UCLA represented but did not deliver. *McGee v. S-L Snacks Nat.*, 982 F.3d 700, 705-06 (9th Cir. 2020) (quoting *Birdsong*, 590 F.3d at 961). Instead, Riffel asserts only the conclusory allegation that she "would not have paid, or reimbursed the payment of, an application fee." FAC ¶¶ 24, 39. Without more, the Court must reject Riffel's economic harm argument. *See In re Apple Processor Litigation*, 366 F. Supp. 3d at 1110.[2]

In sum, Riffel has failed to establish that she suffered from an injury-in-fact.[3] Because Riffel cannot show a judicially cognizable harm, she lacks standing and the Court therefore **GRANTS** Defendant's motion to dismiss on jurisdictional grounds.

## IV.   LEAVE TO AMEND

In determining whether leave to amend is appropriate, the district court considers "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (noting amendments should be granted with "extreme liberality"); Fed. R. Civ. Pro. 15(a)(2) (court should

---

[2] The Court also finds that Riffel lacks standing to seek injunctive relief for the separate and independent reason that she has not alleged any future harm to herself that an injunction would redress. "To have Article III standing to seek injunctive relief in a federal court, a plaintiff must demonstrate 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1247-48 (N.D. Cal. 2017). Because the underlying basis for her alleged "harm"—the college admissions scandal—has ceased, Riffel is not able to show there is a sufficient likelihood that she would be wronged in a similar way. *See* RJN, Ex. C.

[3] Riffel asserts a claim under California's Unfair Competition Law ("UCL"). But to have standing under California's UCL, a plaintiff must establish in part that they (1) suffered an injury-in-fact and (2) lost money or property as a result of the unfair competition. *See Birdsong*, 590 F.3d at 959 (citations omitted). Because Riffel has not alleged the requisite injury-in-fact, the Court also concludes that she lacks standing to bring her California UCL claim.

Case No.: 5:19-cv-07489-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

7

freely allow amendment when "justice so requires"). If leave to amend would be futile, however, the court may deny leave. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile.").

Here, the Court finds that leave to amend would be futile. Similar to the student plaintiffs in *Tamboura* and *Bendis*, Riffel would have to show some connection between the college admissions scandal and her admissions review. For the reasons discussed above and in *Tamboura*, the Court does not believe that Riffel will be able to plead facts connecting the scheme to defraud to UCLA's general admissions process. Accordingly, the Court determines that amendment would be futile.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** on jurisdictional grounds without leave to amend.

**IT IS SO ORDERED.**

Dated: August 17, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-07489-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

8